**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

DANIEL PASSERO,

                Plaintiff,

   v.

MEREDITH SCHULZ, Washington County
APS Case Worker; ANDREW
WILLIAMSON, Washington County APS
Case Worker,

                Defendants.

1:17-CV-1296
(TJM/CFH)

---

**APPEARANCES:**

Daniel Passero
19 North Street, Apt. 2D
Granville, New York 12832
Plaintiff pro se

## REPORT-RECOMMENDATION AND ORDER

### I. Background

On June 7, 2018, this Court adopted the undersigned's February 1, 2018 Report-Recommendation and Order recommending that plaintiff pro se Daniel Passero's complaint be dismissed without prejudice and with leave to amend. Dkt. Nos. 6, 9. On June 27, 2018, plaintiff filed an amended complaint. Thus, pending before the Court is review of plaintiff's amendment complaint pursuant to 28 U.S.C. § 1915.

In the February 1, 2018 Report-Recommendation and Order, the undersigned concluded that plaintiff had failed to demonstrate the existence of federal question jurisdiction. Dkt. No. 6. Liberally interpreting the complaint, the undersigned concluded that it was possible that plaintiff was attempting to bring the case pursuant to the

Fourteenth Amendment under the limited "State-created danger theory" of liability, but noted that plaintiff had failed to prove that either defendant took an affirmative act creating an opportunity for a third party to harm or increase the risk of harm to the victim. Id. at 7. Further, the undersigned noted that plaintiff appeared to attempt to set forth state-law claims of negligence, and that if plaintiff could not set forth a meritorious federal law claim, the Court could decline to accept the state law claims under its supplemental jurisdiction. Id. at 8. In light of special solicitude, the undersigned recommended affording plaintiff an opportunity to amend "to attempt to demonstrate this Court's federal question jurisdiction." Id. at 9. After review of plaintiff's amended complaint, dkt. no. 10, the undersigned concludes that plaintiff has not demonstrated federal question jurisdiction. Accordingly, it is recommended that plaintiff's Amended Complaint, Dkt. No. 10, be dismissed.

## II. Amended Complaint
### A. Meredith Schultz

In his amended complaint, plaintiff contends that Meredith Schultz had a duty, in her role as an Adult Protective Services case management worker, to "seek a remedy for improper medical treatment," and that over a period of ten years, plaintiff did not receive proper treatment and she knew that the denial of treatment would cause him injury. Dkt. No. 10 at 3. Plaintiff contends that Schultz's actions cannot be "mere neglect" because they committed "deliberate multiple acts of injury in that its [sic] the adult protective agencies [sic] primary mission of existence and responsible [sic] to

2

remedy such situation" insofar as Schultz "is obligated by her job duties and responsibility in her job to seek legal/court action for all individuals in her care . . . but she never did anything of her job duties to remedy the medical issues at hand." Id. Plaintiff contends that Schultz's failure to take action "allowed the multiple treating facilities to continue to provide improper and even moot treatment causing the plaintiff to suffer for years and costing the State thousands of dollars." Id. at 3. Plaintiff contends that Schultz's omissions violated his "Fourteenth Amendment Constitutional Right of Equal Treatment in that all person [sic] under the care of adult protection agencies are entitled to these basic agency rights" and his "Fifth Amendment Constitutional Right of Due Process because she never initiated the due process of legal action required in her job duties that would of [sic] provided a court order ensuring that the treating health care facilities perform their job duties." Id. at 4.

     Plaintiff reiterates his claims that Schultz failed in her duties by failing to assist him in maintaining a residence "by intentional neglect in her role as an Adult Protective Service Case Worker" by failing to "assist to remedy the unjust eviction for nonpayment of rent on October 25th 2011 when the plaintiff's rent was paid in full as originally agreed upon by both the landlord and tenant." Compl. at 4. Plaintiff also alleges that she failed to inspect his residence in Granville, New York in September 2017, and the failure to inspect resulted in "unsafe, unsanitary living conditions." Id. at 4-5. Plaintiff alleges the failure to inspect the residence violated his "14th Amendment of the United States Constitution in that tall individuals are entitled to the protection of such inspection." Id. at 5.

## B. Andrew Williamson

Plaintiff raises nearly identical claims against Williamson. Plaintiff contends that Williamson, in his capacity as an Adult Protective Service case management worker, committed various omissions insofar as he failed to seek, on plaintiff's behalf, a remedy for improper medical treatment plaintiff received, despite being made aware of the problem. Compl. at 5. Plaintiff contends that the omissions were ongoing and that the violation of his duties and refusal to remedy "medical neglect/abuse" of plaintiff is "proven to be so by a diagnosis of periodontal disease in 2014-2015" and that such omissions or failures to act spanned a decade. Id. Plaintiff contends that Williamson deliberately refused to: take action, complete his job duties "to seek proper medical treatment where the Plaintiff is unable," and pursue "legal/court action for the plaintiff if he did not have the jurisdiction or ability to remedy the neglect of the medical issues at hand by the never did anything [sic] of his job duties to remedy the neglect." Id. at 6. Plaintiff alleges that Williamson's failure to seek and obtain proper medical treatment violated his "Fourteenth Amendment Constitutional Right of Equal Treatment" and his "Fifth Amendment Constitutional Right of Due Process because he never initiated the due process of legal action required in his job duties that would of [sic] provided a court order ensuring that the treating health care facilities perform their job duties." Id.

Further, plaintiff contends that Williamson failed to meet his job duties of assisting plaintiff to maintain "a safe, sanitary place of residence" which lead to plaintiff's loss of residence. Compl. at 10. Plaintiff refers to what appears to be a court case involving a dispute between plaintiff and his landlord at an address in Argyle, New

4

York. Id. at 7 (referencing a "local judge" who "would not accept a counter claim nor allow the plaintiff to present any evidence. The local judge did offer a lower rent but took no evidence to substantiate justification of lower rent.").

Plaintiff also refers to various diagnoses he has, and points out medical complications he faces due to periodontal disease, including weight loss, "delirium," infection, and the change in the size of his head. Compl. at 8-9. Plaintiff demands $500,000 "for pain and suffering." Compl. at 10.

### C. Review

It is recommended that plaintiff's claims against Schultz and Williamson be dismissed as plaintiff has failed to demonstrate the existence of a federal question. Although plaintiff contends that Schultz and Williamson's failure to assist him in obtaining proper medical treatment, maintaining a residence, and inspecting a residence for cleanliness/safety violated his Fourteenth Amendment right to equal protection of the laws and his Fifth Amendment due process rights, these claims must fail.

First, plaintiff has failed to state a Fourteenth Amendment Equal Protection claim. Plaintiff appears to contend that defendants violated his equal protection rights when they failed to assist him in obtaining proper medical care because all disabled persons who are under the care of Adult Protective Services are entitled to proper medical care. Dkt. No. 10 at 4-5.

The Fourteenth Amendment's Equal Protection Clause mandates equal

5

treatment under the law. Essential to that protection is the guarantee that similarly-situated persons must be treated equally. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).

> To make out an equal protection claim under the Fourteenth Amendment, a plaintiff must allege that "(1) [he], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, [disability,] intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. Thus, '[t]o prove a violation of the Equal Protection Clause ... a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination.'"

Darvie v. Countryman, No. 9:08-CV-715 (GLS/GHL), 2010 WL 3724020, at *1 (N.D.N.Y. Sept. 15, 2010) (quoting LeClair v. Saunders, 627 F.2d 606, 609-10 (2d Cir. 1980) (internal citation omitted). Alternatively, a plaintiff may proceed under a "class of one" theory, wherein

> he must allege that he has "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. Accordingly, to prevail on a 'class of one' claim, a plaintiff must allege either that the disparate treatment was motivated by personal animus or was irrational and wholly arbitrary."

Id. (quoting Harlen Assoc. v. Inc. Vill. of Mineola, 273 F.3d 494, 500 (2d Cir. 2001) (internal citation omitted). Further, many courts in this Circuit have held that one cannot bring an equal protection claim regarding disability, concluding that disability is not a suspect class. See Gallagher v. Town of Fairfield, 3:10-CV-1270, 2011 WL 3563160, at *4 (D. Conn. Aug. 15, 2011); Kaiser v. Highland Cent. Sch. Dist., No. 1:08-CV-436, 2008 WL 5157450, at *2 (N.D.N.Y. Dec. 8, 2008).

Here, plaintiff does not explicitly allege that he was treated differently from other similarly-situated adults under the care of Adult Protective Services; instead, he generally claims that "all person [sic] under the care of adult protective agencies are entitled to these basic agency rights," and that he was being denied that care. Dkt. No. 10 at 4; see also id. at 5 (contending that defendant's failure to inspect his residence violated the "14th Amendment of the United States Constitution in that all individuals are entitled to the protection of such inspection"). Thus, the most liberal reading may suggest that plaintiff appears to be presenting a "class of one" argument. However, plaintiff does not argue – nor does his pleading even hint – that he was denied certain treatment *because* of his disability, but out of defendants' negligence or carelessness. He does not argue that the omissions occurred because of personal animus or as an irrational act. See Darvie, 2010 WL 3724020, at *1. As plaintiff's pleadings wholly fail to demonstrate either that he was treated similarly-situated from other people on behalf of a protected trait or a class-of-one theory where he was *intentionally* treated differently from others similarly situated based on personal animus or an irrational and wholly arbitrary reason. Id. Further, as discussed above courts in this Circuit tend to hold that disability is not a protected class under the Fourteenth Amendment. See, e.g., Gallagher, 2011 WL 3563160, at *4. Accordingly, it is recommended that plaintiff's claims pursuant to the Equal Protection Clause of the Fourteenth Amendment be dismissed with prejudice.

Plaintiff's allegations that defendants violated his Fifth Amendment right of due process of the laws insofar as they failed to commence legal action on his behalf also

7

must fail.  Plaintiff suggests that, because he was a recipient of Adult Protective Services, and such agency had a mission to provide certain services to individuals with disabilities such as plaintiff, the individual defendants had a duty to provide certain care or assistance, and their failure to provide it violated the Due Process Clause.  Arguably, plaintiff suggests that the state's adult protective welfare statutes create a constitutionally-enforceable right to certain adult protective services which is subject to due process protection.  The Second Circuit has noted that the Supreme Court of the United States has held that "'[T]he Due Process Clause[] generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." Suffolk Parents of Handicapped Adults v. Wingate, 1010 F.3d 818, 823 (2d Cir. 1996).  The Second Circuit observed that the Supreme Court identified "a single exception to this rule . . . 'when the State takes a person into its custody and *holds him there against his will*, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.'" Id. (emphasis in original) (quoting Brooks v. Guiliani, 84 F.3d 1454, 1466 (2d Cir. 1996) (quoting DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 196 (1989)).  Here, even if Adult Protective Services was providing plaintiff with certain services and/or care, plaintiff was not involuntarily institutionalized nor does he demonstrate that he was otherwise involuntarily in state custody; thus, plaintiff has not demonstrated that he falls into the "single exception" allowing for an affirmative duty pursuant to the Due Process Clause.  Accordingly, it is recommended that plaintiff's Fifth Amendment claims be dismissed

with prejudice.

Finally, plaintiff raises the same state-law negligence claims he originally raised in his complaint. As the undersigned indicated then, because the undersigned recommends dismissal of the federal law claims, it is recommended that the Court decline to exercise supplemental jurisdiction over plaintiff's state law claims. See, e.g., Purgess v. Sharrock, 33 F.3d 134 (2d Cir. 1994). Accordingly, it is recommended that plaintiff's state law claims be dismissed, but without prejudice to plaintiff commencing an action in an appropriate state court/forum.[1]

### III.  Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED**, that plaintiff's Amended Complaint (Dkt. No. 10) be **DISMISSED with prejudice**, but that the dismissal be without prejudice to plaintiff commencing an action in state court relating to his state law claims.

**ORDERED**, that the Clerk of the Court serve this Report-Recommendation and Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1), the plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN**

---

[1] The undersigned reaches no decision as to whether plaintiff may properly commence an action in state court nor the success of these claims.

9

**(14) DAYS WILL PRECLUDE APPELLATE REVIEW**. See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Services, 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); F ED. R. CIV. P. 72 & 6(a).

Dated: August 6, 2018
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

10